**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

| | |
|---|---|
| ***In Re: AACOM Data Breach Litigation*** | **Case No. 8:25-cv-01239-DLB** |

# TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. INCORPORATION BY REFERENCE ..... 2

III. SUMMARY OF THE SETTLEMENT ..... 2

A. Settlement Consideration ..... 2

1. Cash Compensation. ..... 3

2. Credit Monitoring. ..... 3

3. Remedial Business Practice Changes. ..... 3

4. Releases. ..... 4

IV. NOTICE PROGRAM, CLAIMS, OPT-OUTS, AND OBJECTIONS ..... 4

A. The Notice Program Satisfies Rule 23 and Due Process. ..... 4

B. Claims, Opt-Outs, and Objections. ..... 6

V. SETTLEMENT CLASS CERTIFICATION ..... 6

VI. THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE ..... 7

A. Legal Standard for Final Approval. ..... 7

B. The Settlement if Fair, Reasonable, and Adequate and Should Be Approved. ..... 9

1. The Settlement Terms Meet the Jiffy Lube Adequacy Requirement. ..... 10

2. The Settlement Terms Meet the Jiffy Lube Fairnesss Requirement. ..... 15

VI. CONCLUSION ..... 16

**PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT**

Pursuant to Fed. R. Civ. P. 23, Plaintiffs[1] respectfully submit this Motion for Final Approval of Class Action Settlement, supported by a Joint Declaration of Class Counsel ("Joint Decl."), attached as ***Exhibit A***, and a Declaration of Tara Trapani of Kroll Settlement Administration LLC in Connection with Final Approval of Settlement ("Admin. Decl."), attached as ***Exhibit B.***

## I. INTRODUCTION

On November 4, 2025, this Court preliminarily approved the Settlement between Plaintiffs and Defendant resolving all disputes arising from the Data Incident. *See* ECF No. 33. The Agreement provides for substantial Settlement Class Member Benefits for 67,804 individuals, including: (1) a non-reversionary, all-cash $700,000.00 Settlement Fund, from which Settlement Class Members may elect to receive Cash Compensation and/or Credit Monitoring; and (2) non-monetary relief consisting of comprehensive cybersecurity improvements. SA ¶¶ 28-31.

Plaintiffs and Class Counsel now move the Court for final approval of the Settlement. The Settlement satisfies all final approval criteria. As of the filing of this Motion, there are zero objections, and zero Settlement Class Members have opted-out. Admin. Decl. ¶¶ 21-22. This overwhelmingly positive response affirms the Court's initial conclusion that the Settlement is fair, reasonable, and adequate. Class Counsel has fully evaluated the strengths, weaknesses, and equities of the Parties' respective positions, and believe the Settlement fairly resolves their differences. The Court should grant final approval of the Settlement and Class Counsel's Motion for Attorneys' Fees, Costs, and Service Awards (previously filed on January 16, 2026, ECF No. 36).

[1] All capitalized terms used herein shall have the same meanings as those defined in the Settlement Agreement ("SA"), filed on October 27, 2025 (ECF No. 32-1).

## II. INCORPORATION BY REFERENCE

In the interest of judicial efficiency, for factual and procedural background on this case, Plaintiffs refer this Court to and hereby incorporate Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement (ECF No. 32) and its accompanying exhibits.

## III. SUMMARY OF THE SETTLEMENT

Plaintiffs seek final approval for the Settlement Class defined as "all individuals residing in the United States whose PII/PHI was identified as at issue in the Data Incident discovered by AACOM in September 2024, including all those individuals who received notice of the Data Incident." SA ¶ 14.kk. Excluded from the Settlement Class are all persons who are directors, officers, or agents of Defendant; the Judge assigned to the Action, that Judge's immediate family, and Court staff; any individual who timely and validly opts-out of the Settlement; and any other person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Data Incident or who pleads *nolo contendere* to any such charge. *Id*.

### A. Settlement Consideration

The Settlement's non-reversionary all-cash $700,000.00 Settlement Fund will be the total sum paid by Defendant to settle this Action and will be used to pay: (1) Cash Compensation and Credit Monitoring; (2) all Settlement Administration Costs; and (3) any Court-awarded Service Awards to Class Representatives; and attorneys' fees and costs awarded to Class Counsel. SA ¶ 20.

#### 1. *Cash Compensation*

*i.* *Compensation For Out-Of-Pocket Losses.* Settlement Class Members not selecting the cash payment may claim the opportunity to select up to $3,500.00 in reimbursement of out-of-

pocket losses upon submission of documented losses related to the Data Incident. *Id.* ¶ 29. To receive a documented loss payment, a Settlement Class Member must submit a valid and timely claim form and reasonable supporting documentation for ordinary losses demonstrably incurred, more likely than not, as a result of the Data Incident. *Id.*

*ii.* *Cash Compensation.* In lieu of electing Compensation for Out-of-Pocket Losses, Settlement Class Members may elect to receive a *pro-rata* cash payment estimated to be $50.00. *Id.* ¶ 28.

**2. *Credit Monitoring***

In addition to electing a Cash Compensation, Settlement Class Members may elect to receive 24 months of 3 bureau Credit Monitoring with $1 million dollars of fraud protection. *Id.* ¶ 30.

**3. *Remedial Business Practice Changes***

Defendant has provided Plaintiffs with assurances that following the Data Incident, it has undertaken reasonable steps, at its own expense, to further secure its systems and environments in a manner designed to protect Settlement Class members' information from future unauthorized disclosure. *Id.* ¶ 31. In addition to the foregoing benefits, all Settlement Class Members will benefit from substantial business practice changes and remedial measures aimed at preventing further unauthorized access to their sensitive Private Information entrusted to Defendant. As part of the Settlement and prior to Final Approval, Defendant will provide a confidential declaration to Settlement Class Counsel describing its information security enhancements since the Data Incident. *Id.* ¶ *Id*. The costs of Defendant's remedial security measures shall be paid for separate and apart from the $700,000.00 non-reversionary settlement fund. These changes inure to the

benefit of Settlement Class Members whose information remains in Defendant's possession.

#### 4. *Releases*

Plaintiffs and each and every Settlement Class Member who is not an Opt-Out Member will release the Released Persons for claims relating to the Data Security Incident. *Id.* ¶ 95. The Releases are narrowly tailored to the claims in the Action. Joint Decl. ¶ 12.

## IV. NOTICE PROGRAM, CLAIMS, OPT-OUTS, AND OBJECTIONS

### A. The Notice Program Satisfies Rule 23 and Due Process

After the Court granted preliminary approval, the Settlement Administrator implemented the Notice Program. *See generally* Admin. Decl.; Joint Decl. ¶ 25. Postcard Notices were sent by direct U.S. Mail to all Settlement Class Members for whom a physical address was known by the Defendant. Admin Decl. ¶9. A Long Form Notice with greater detail is also available on the Settlement Website or by mail upon request by a Settlement Class Member. Admin. Decl. ¶7. Postcard Notices returned as undeliverable were re-mailed to any new addresses that were found using a reasonable address trace service. *Id.* ¶¶ 14-15. As of February 6, 2026, direct individual notice efforts have reached approximately 98.05% of the Settlement Class members. *Id.* ¶ 16.

The Postcard Notice clearly and concisely summarized the Settlement and the Settlement Class Members' legal rights and directed them to the Settlement Website for additional information, including the Long Form Notice and Settlement Agreement and how to submit a Claim. *Id*. Exs. C-E.

In addition to Postcard Notice, supplemental notice was provided online via Facebook and LinkedIn. *Id.* ¶ 10. The online media campaign commenced on November 25, 2025, ended on December 25, 2025, and delivered 3,569,079 impressions via Facebook and LinkedIn. *Id.* ¶11

The Settlement Administrator established a dedicated Settlement Website for Settlement

Class Members to obtain detailed information about the Action, review important documents and relevant dates, and obtain contact information for the Settlement Administrator. *Id.* ¶ 7. The Settlement Administrator also established a toll-free telephone line for the Settlement Class to call with Settlement-related inquiries and answer frequently asked questions of individuals in the Settlement Class who call with or otherwise communicate such inquiries. *Id.* ¶ 6. As of February 6, 2026, there have been 31 calls to the toll-free line. *Id*.

The Notice Program provided was "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950). The Notice conveyed the required information to the Settlement Class, allowing reasonable time for those interested in making an appearance to do so. To satisfy due process, notice to class members must be the best practicable, and reasonably calculated under all the circumstances to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. Fed. R. Civ. P. 23(e); *see also Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). Accordingly, a settlement notice need only satisfy the broad reasonableness standards imposed by due process. *Id*.

Here, the Notice adequately informed Settlement Class Members of the nature of the Action, the Settlement Class definition, the claims at issue, the Settlement Class Member's rights to object or opt-out, and/or enter an appearance through an attorney, and the binding effect of Final Approval and class judgment. *See* Admin. Decl., Exs. C-G. The Notice utilized clear and concise language that is easy to understand. Moreover, the Settlement Administrator—with the assistance of the Parties—took all necessary measures to ensure Notice reached as many of the Settlement Class Members as possible. Direct notice reached 98.05% of the Settlement Class. *Id.* ¶ 16. Such

notice complies with the program approved by this Court in its Preliminary Approval Order, meets due process considerations, and weighs in favor of Final Approval.

### B. Claims, Opt-Outs, and Objections

The Claims Process was structured to give all Settlement Class Members adequate time to review the Settlement terms, submit their Claims, and decide whether to opt-out of or object to the Settlement. Joint Decl. ¶ 25. The opt-out and objection deadline is February 2, 2026, and the Claims Form Deadline is March 4, 2026. Preliminary Approval Order, ECF No. 33, at 17. As of February 6, 2026, the Settlement Administrator has received 3,930 Claim Forms, no opt-out requests and no objections. Admin. Decl. ¶¶ 18, 21-22. Class Counsel anticipate that the number of filed claims will continue to increase until the Claims Form Deadline. Class Counsel will update the Court with the final results of the Notice Program at the Final Approval Hearing, including responding to an objection, if any is filed.

## V. SETTLEMENT CLASS CERTIFICATION

The Court granted Preliminary Approval on November 4, 2025. ECF No. 33. In the Court's Preliminary Approval Order, the Court, for settlement purposes only, preliminarily certified the Action as a class action for the Settlement Class, finding prerequisites of numerosity, commonality, typicality, adequacy, predominance, and superiority were satisfied pursuant to Fed. R. Civ. P. 23(a) and (b)(3), and that the Settlement Class should be certified pursuant to Fed. R. Civ. P. 23(b)(2). The Court appointed Plaintiffs as Class Representatives pursuant to Fed. R. Civ. P. 23(e)(2)(A), and Leigh Montgomery of Ellzey Kherkher Sanford Montgomery, LLP, David K. Lietz of Milberg Coleman Bryson Phillips Grossman, PLLC, Leanna A. Loginov of Shamis & Gentile, P.A., and Raina C. Borrelli of Strauss Borrelli PLLC as Class Counsel. The Court also appointed Kroll Settlement Administration, LLC as the Settlement Administrator and approved

the Notices and Claim Form.

Because nothing has changed regarding class certification, the Court should finally certify the Settlement Class. Specifically, the Settlement Class still meets the requirements of numerosity, commonality, typicality, adequacy of representation, predominance, and superiority under Rules 23(a) and 23(b)(3). Thus, the Court should finally certify the Settlement Class for settlement purposes. For efficiency, Plaintiffs incorporate by reference their Settlement Class certification arguments from the Motion for Preliminary Approval. ECF No. 32 at 9–16.

## VI. THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE.

### A. Legal Standard for Final Approval

Plaintiffs bring this motion pursuant to Federal Rule of Civil Procedure 23(e), under which a class action may not be settled without approval of the Court. Fed. R. Civ. P. 23(e). "Federal Rule 23(e) has been applied and analyzed thoroughly in reported decisions of Maryland's federal district courts and the Fourth Circuit, as well as nationally." *Shenker v. Polage*, 130 A.3d 1171, 1178-79, 226 Md. App. 670, 683 (Md. Ct. Spec. App. 2016) (citing *Berry v. Schulman*, 807 F.3d 600 (4th Cir. 2015)); *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155 (4th Cir.1991); *Flinn v. FMC Corp.*, 528 F.2d 1169 (4th Cir.1975); *In re Mid–Atl. Toyota Antitrust Litig.*, 564 F. Supp. 1379 (D. Md. 1983); *In re Montgomery Cnty. Real Estate Antitrust Litig.*, 83 F.R.D. 305 (D. Md. Jun. 8, 1979).

The Court must make a determination as to the fairness, reasonableness, and adequacy of the settlement terms. *See* Fed. R. Civ. P. 23(e)(2); *Manual for Complex Litigation* (Fourth), § 21.632 (4th ed. 2004). The approval process involves two steps. At the first, or preliminary approval stage, the Court need only find that the settlement is within "the range of possible approval" and warrants notice being issued to the class. *Horton v. Merrill Lynch, Pierce, Fenner & Smith*, 855 F. Supp. 825, 827 (E.D.N.C. May 6, 1994) (citing *In re Mid-Atl. Toyota Antitrust*

*Litig.*, 564 F. Supp. at 1384). This first step involves both preliminary certification of the class and an initial assessment of the proposed settlement. *Id.*; *Manual for Complex Litigation*, § 30.41 (3d ed. 1995). It is only after a court has preliminarily approved a settlement, and notice has been provided to the Class, that the court makes a final determination of the fairness, adequacy, and reasonableness of a Settlement.

The primary concern for a court in reviewing a proposed class settlement is to ensure that the rights of class members have received sufficient consideration in settlement negotiations. *In re Jiffy Lube Sec. Litig.*, 927 F.2d at 158-59. Approval of a class action settlement is committed to the "sound discretion of the district courts to appraise the reasonableness of particular class-action settlements on a case-by-case basis, in light of the relevant circumstances." *In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 663 (E.D. Va. July 10, 2001). However, "there is a strong initial presumption that the compromise is fair and reasonable." *S.C. Nat'l Bank v. Stone*, 139 F.R.D. 335, 339 (D.S.C. Aug. 20, 1991).

Moreover, as the Fourth Circuit has recognized, courts strongly favor and encourage settlements. *See, e.g., United States v. Manning Coal Corp.*, 977 F.2d 117, 120 (4th Cir. 1992) ("It has long been clear that the law favors settlement."). "This is particularly true in class actions" and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See, e.g.*, *Six v. Loancare, LLC*, No. 5:21-cv-00451, 2022 WL 16747291, at *3 (S.D. W. Va. Nov. 7, 2022) (quoting *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 311 (3d Cir. 2011) and citing *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998) (noting the "strong judicial policy in factor of settlements, particularly in the class action context")).

The Court preliminarily approved the Settlement and the Notice Program on November 4,

2025. ECF No. 33. Notice has now been sent to the Settlement Class and the Settlement has been well received. Plaintiffs now request that this Court finally certify the Action, finally approve the Settlement, grant Plaintiffs' previously filed Motion for Attorneys' Fees, Costs, and Service Awards (ECF No. 36), dismiss the Action with prejudice, and enter the Final Approval Order. The proposed Settlement is fair, adequate, and reasonable. With final approval, Plaintiffs and Settlement Class Members may begin to appreciate the monetary and non-monetary benefits of the Settlement.

**B. The Settlement is Fair, Reasonable, and Adequate and Should Be Approved.**

The Fourth Circuit has developed a two-part analysis in *Jiffy Lube* to determine whether to grant final approval of a class action settlement: (1) adequacy—whether the class recovery is adequate in comparison to what the class gives up; and (2) fairness—whether the procedure by which the settlement was negotiated was proper.[2] *See In re Jiffy Lube*, 927 F.2d at 159; *Clark v. Experian Info. Sols., Inc.*, No. 8:00-1217-22, 2004 WL 256433, at *5 (D.S.C. Jan. 14, 2004), *decision clarified* (Feb. 9, 2004).

1. The Settlement Terms Meet the *Jiffy Lube* Adequacy Requirement.

In analyzing the adequacy of a proposed settlement, the Court should consider the *Jiffy Lube* factors: (1) the relative strength of the case on the merits; (2) any difficulties of proof or strong defenses the plaintiff and class would likely encounter if the case were to go to trial; (3) the

[2] "In the Fourth Circuit, the Rule 23(e)(2) analysis has been condensed into the two-step *Jiffy Lube* test which examines the fairness and adequacy of the settlement." *Skochin v. Genworth Fin., Inc.*, No. 3:19-cv-49, 2020 WL 6697418, at *2 (E.D. Va. Nov. 12, 2020); *In re Lumber Liquidators Chinese-Manufactured Flooring Prods., Sales Pracs. & Prods. Liab. Litig.*, 952 F.3d 471, 484 (4th Cir. 2020) ("[B]ecause our factors for assessing class action settlement almost completely overlap with the new Rule 23(e)(2) factors, the outcome … would be the same under both our factors and the Rule's factors."); *see also Yost v. Elon Prop. Mgmt. Co. Lexford Pools 1/3, LLC*, No. ELH-21-1520, 2023 WL 185178, at *4 (D. Md. Jan. 13, 2023) (same) (granting final approval after evaluating adequacy and fairness of settlement under *Jiffy Lube* factors).

expected duration and expense of additional litigation; (4) the solvency of the defendants and the probability of recovery on a litigated judgment; and (5) and the degree of opposition to the proposed settlement. *See In re Jiffy Lube*, 927 F.2d at 159; *Clark*, 2004 WL 256433, at *5.

*a. The Relative Strength of the Case on the Merits, the Risks of the Case If the Case Were to Go to Trial, and the Duration and Expense of Additional Litigation Weigh in Favor of Final Approval.*

By their very nature, because of the many uncertainties of outcome, difficulties of proof, and lengthy duration, class actions readily lend themselves to compromise. *See S.C. Nat'l Bank v. Stone*, 749 F. Supp. 1419, 1423 (D.S.C. July 25, 1990) (noting that settlement spares litigants the uncertainty, delay, and expense of a trial and appeals while simultaneously reducing the burden on judicial resources). Here, the first three *Jiffy Lube* factors are closely related, and weigh in favor of Final Approval of the proposed settlement.

The value achieved through the Settlement is guaranteed, where chances of prevailing on the merits are uncertain. While Plaintiffs believe their case is strong, there would be substantial risk in litigating the case. Data breach cases are, by nature, especially risky and expensive. Such cases also are innately complex. *See, e.g.*, *In re Equifax Inc. Customer Data Sec. Breach Litig.*, No. 1:17-MD-2800, 2020 WL 256132, at *32 (N.D. Ga. Mar. 17, 2020), *aff'd in part, rev'd in part and remanded*, 999 F.3d 1247 (11th Cir. 2021) (recognizing the complexity and novelty of issues in data breach class actions); *Gordon v. Chipotle Mexican Grill, Inc.*, No. 17-cv-01415-CMA-SKC, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019) ("Data breach cases . . . are particularly risky, expensive, and complex.") ("This field of litigation is evolving; there is no guarantee of the ultimate result."). This case is no exception to that rule. It involves 67,804 class members, complicated and technical facts, and a well-funded and motivated Defendant.

There are numerous substantial hurdles Plaintiffs would have to overcome before the Court

might find a trial appropriate. Data breach cases, in particular, face substantial hurdles in surviving past the pleading stage and are among the riskiest and most uncertain types of litigation. *See Hammond v. The Bank of N.Y. Mellon Corp.*, No. 08 CIV. 6060 RMB RLE, 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting data breach cases dismissed at the Rule 12(b)(6) or Rule 56 stage). Here, Defendant disputes Plaintiffs' allegations and denies that it is liable for any harm caused to Plaintiffs from the Data Incident and has indicated it will vigorously defend the case. While Plaintiffs have arguments and authorities that can support their allegations, the number of issues in this case, which centers on a developing area of law—data breach litigation— nonetheless creates significant uncertainty in this case. Even if Plaintiffs were to prevail, there exists a substantial degree of uncertainty on subsequent appeals, again due to the developing nature of this area of law. Thus, despite Plaintiffs' confidence in the strength of this case, numerous legal issues and factual disputes exist that undermine the likelihood of a more favorable outcome for the Settlement Class.

Indeed, there are inherent risks associated with taking any data breach class action to trial, including pre-trial risks of obtaining and maintaining class certification and defeating summary judgment. To emphasize this point, the Court need only look at two very high profile data breach cases, including one from this judicial district: *In re Brinker Data Incident Litig*., No. 3:18-cv-686-TJC-MCR (M.D. Fla.) *and In re Marriott Int'l Inc. Customer Data Sec. Breach Litig*., No. 19-md-2879 (D. Md.). In both cases, plaintiffs were forced to re-litigate standing; partially lost *Daubert* motions to exclude some of their expert damages models supporting the motions; had the courts narrow the class definitions in order to grant any certification of a class; had the courts reject class certification of some of the claims and classes; and faced numerous, very serious issues on damages calculations, predominance, and causation. *See Brinker Data Incident Litig.*, No. 3:18-

cv-686-TJC-MCR, 2021 WL 1405508, at *13 (M.D. Fla. Apr. 14, 2021) (noting that "if it becomes obvious at any time that the calculation of damages (including accounting for multiple data breaches) will be overly burdensome or individualized, the Court has the option to decertify the class"), vacated in part and remanded *Green-Cooper v. Brinker Int'l, Inc.*, 73 F.4th 883 (11th Cir. 2023), *Theus v. Brinker Int'l, Inc.*, No. 3:18-CV-686-TJC-MCR, 2025 WL 1786346, at *4 (M.D. Fla. June 27, 2025) (denying class certification on negligence claim on remand); *In re Marriott Int'l Inc. Customer Data Sec. Breach Litig.*, No. 19-md-2879, 2022 WL 1396522, at *24 (D. Md. May 3, 2022) (approving only the overpayment damages theory where the information necessary to calculate damages is "objective and administrative in nature" and holding if the individual inquiries metastasize to an impermissible level, the court could modify the order, create subclasses, bifurcate liability and damages or decertify the class). Moreover, even if the class was certified, there is always the risk or possibility of decertification. *See In re Marriott Int'l, Inc.*, 78 F.4th 677, 680 (4th Cir. 2023) (decertifying classes and remanding), *In re Marriott Int'l Customer Data Sec. Breach Litig.*, No. 19-MD-2879, 2023 WL 8247865, at *1 (D. Md. Nov. 29, 2023) (recertifying class on remand); *Maldini v. Marriott Int'l, Inc.*, No. 24-1064, 2025 WL 1560372, at *1 (4th Cir. June 3, 2025) (reversing certification a second time).

The Settlement allows for Settlement Class Members to obtain benefits now—as opposed to potentially waiting for years for discovery, trial, and appeals—and eliminates the possibility of receiving no benefits. *See In re CertainTeed Fiber Cement Siding Litig.*, 303 F.R.D. 199, 216 (E.D. Pa. Mar. 20, 2014) ("[I]f the parties were to continue to litigate this case, further proceedings would be complex, expensive and lengthy, with contested issues of law and fact . . . . That a settlement would eliminate delay and expenses and provide immediate benefit to the class militates in favor of approval."). Resolution in the near-term also helps mitigate any past, current, and future harm

to Settlement Class Members by providing access to credit monitoring benefits in the near-term, rather than after prolonged litigation.

Continued litigation would also likely involve costly discovery involving experts regarding damages, motions for summary judgment, a motion for class certification, and one or more interlocutory appeals, all of which would delay final resolution. Litigating this case to a favorable conclusion will require a considerable amount of time and resources and weighs in favor of accepting the Settlement now. *See In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 347 (N.D. Ill. Aug. 11, 2010) ("Even if Plaintiffs were to succeed on the merits at some future date, a future victory is not as valuable as a present victory. Continued litigation carries with it a decrease in the time value of money, for '[t]o most people, a dollar today is worth a great deal more than a dollar ten years from now.'") (internal citation omitted).

Here, the relief provided for in the Settlement represents a significant and excellent result for the Settlement Class, establishing an all-cash non-reversionary Settlement Fund of $700,000.00 from which Settlement Class Members are eligible to make a claim for: (1) reimbursement for documented losses up to $3,500.00; (2) Cash payments to all valid claimants; and (3) credit monitoring to all valid claimants. The Settlement also provides, separate and apart from the $700,000.00 Settlement Fund, for extensive remedial security measures aimed at protecting Settlement Class Members data in the future.

Based upon all this relief, this is a sizeable recovery for the Settlement Class and represents real, meaningful benefits for Settlement Class Members.[3] The Settlement provides benefits that

[3] These Settlement terms are consistent with agreements approved by courts in other, similar data breach cases. *See, e.g.*, *Foster et al. v. Lower, LLC,* CA 1:22-CV-1581 (D. Md.) (approving $1,425,000 non-reversionary common fund for 180,865 class members, equaling $7.87 per person) (final approval granted December 4, 2023, ECF No 48); *Brent et. al v. Advanced Medical Management, LLC*, CA No. 1:23-cv-3254-JKB (D. Md.). ($2.5 million non-reversionary common fund for 319,693 class members, equaling $7.82 per person) (final approval granted December 16, 2024, ECF No. 42); *Kesner, et al. v. UMASS*

address all potential harms of a data breach without the substantial risks, uncertainties, and duration and expense of continued litigation. Accordingly, the Settlement easily weighs in favor of final approval.

*b. The Solvency of AACOM on a Litigated Judgment is Neutral and Does Not Preclude Final Approval*

There is no evidence that Defendant is in danger of becoming insolvent during the presumed duration of this litigation or as the result of a reasonable jury award should Plaintiffs prevail. Thus, this factor is neutral in the analysis and does not preclude the Court from granting final approval. *See Brown v. Transurban USA, Inc.*, 318 F.R.D. 560, 573 (E.D. Va. 2016) (noting irrelevance of solvency when other factors weigh in favor of approval).

c. *The Degree of Opposition to the Proposed Settlement.*

The reaction of the Settlement Class to the proposed Settlement has been overwhelmingly positive. Indeed, as of February 6, 2026, out of the 67,804 Settlement Class Members who received notice, *no* Class Members requested timely exclusion, and *no* Class Members objected to the Settlement. Admin Decl. ¶ 21-22. The lack of opt-outs further supports the conclusion that the Settlement satisfies the adequacy requirement. *See e.g.*, *Skochin*, 2020 WL 6697418 at *4 (granting final approval where there were 191 exclusions and 32 objections out of class of 207,000). "'It is well established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are

*Memorial Health Care, Inc.*, No. 2185-cv-01210 (Mass. Supp. Ct.) (approving $1.25 million settlement for 209,047 class members for a per class member recovery of $5.74); *Bingaman, et al. v. Avem Health Partners Inc.,* Case No. CIV23-130-SLP (W.D. Ok.) (approving $1.45 million settlement for 271,303 class members for a per-class member recovery of $5.34); *Madkin v. Automation Personnel Servs., Inc.*, No. 2:21-cv-1177 (N.D. Ala.) (approving $1.37 million settlement for 299,253 class members for a class member recovery of $4.59). Here, the per-person recovery is $10.32 ($700,000 divided by 67,804 Settlement Class Members). This is an important factor in the fairness analysis. *See Boger*, 2023 WL 3763974, at *11 (court observing expected payment exceeds settlements in other similar cases).

favorable to the class members.'" *West v. Cont'l Auto., Inc.*, No. 3:16-cv-00502-FDW-DSC, 2018 WL 1146642, at *6 (W.D. N.C. Feb. 5, 2018)) (quoting *Nat'l Rural Telecom. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. Jan. 5, 2004) (collecting cases)). Moreover, as of February 6, 2026, 3930 Settlement Class Members have submitted claims to receive benefits under the Settlement. Admin Decl. ¶ 18. Given that the claims deadline is March 4, 2026, the number of claims already submitted reflects a highly positive response from the Settlement Class. Thus, the presumption in favor of final approval applies here.

2. <u>The Settlement Terms Meet the *Jiffy Lube* Fairness Requirement.</u>

The Fourth Circuit has listed four factors that a court should consider in concluding whether a proposed settlement agreement is fair, and reached in good faith without collusion: (1) the posture of the case at the time it settled; (2) the extent of discovery that had been conducted; (3) the circumstances surrounding the negotiations; and (4) the relevant experience of counsel. *S.C. Nat'l Bank*, 139 F.R.D. at 339, citing *In re Jiffy Lube*, 927 F.2d 155 at 158-59.

"A proposed class action settlement is considered presumptively fair where there is no evidence of collusion and the parties, through capable counsel, have engaged in arms' length negotiations." *Harris v. McCrackin*, No. 2:03-3845-23, 2006 WL 1897038, at *5 (D.S.C. July 10, 2006); *see also ADESSO Homeowners' Ass'n v. Holder Props., Inc.*, No. 3:16-cv-710-JFA, 2017 WL 11272589, at *8 (D.S.C. May 23, 2017) ("[A] proposed class action settlement is considered presumptively fair where there is no evidence of collusion and the parties, through capable counsel, have engaged in arms' length negotiations."). This presumption applies here.

This Settlement is the result of protracted and intense arm's-length negotiations that took place between highly experienced attorneys familiar with class action litigation—and data breach class actions, in particular—and the legal and factual issues in these cases. Joint Decl. ¶¶ 7-9, 29-

30. Before discussing potential settlement, Plaintiffs' counsel conducted extensive discovery into the Data Incident and drafted a detailed Complaint, after researching case law and the Parties' respective positions, the Parties completed an extensive investigation and exchanged informal discovery—both of which helped them fully understand the strengths and weaknesses of their claims and defenses and the risks of continued litigation. *Id.* ¶ 8. While the negotiations were always collegial, cordial, and professional, there is no doubt that they were adversarial in nature, with both parties forcefully advocating the positions of their respective clients. *Id.* ¶ 13. The final Settlement Agreement is the result of prolonged and serious arms' length negotiations between counsel for the Parties. *Id*. Lastly, the relevant experience of Plaintiffs' counsel should not be overlooked here, as they have collectively litigated hundreds of data breach class actions that have been granted final approval nationwide. This Settlement is the product of the counsel's collective knowledge and unique experience litigating data breach class actions.

Accordingly, the Settlement satisfies the *Jiffy Lube* test for fairness and adequacy, and the Court should grant final approval of this Settlement.

## V. CONCLUSION

Plaintiffs and Class Counsel respectfully request this Court enter an Order: (1) granting Final Approval to the Settlement; (2) affirming certification of the Settlement Class for settlement purposes, pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3); (3) confirming the appointment of Plaintiffs as Class Representatives; (4) confirming the appointments of Leigh Montgomery, David Lietz, Leanna A. Loginov, and Raina C. Borrelli as Class Counsel; (5) confirming the appointment of Kroll as Settlement Administrator; (6) approving payment of the Settlement Administration Costs; (8) overruling timely objections, if any; and (9) entering final judgment dismissing the Action with prejudice and reserving jurisdiction over Settlement implementation. Plaintiffs attach

hereto a proposed Final Approval Order as ***Exhibit C***.

Dated: February 6, 2026

Respectfully submitted,

/s/Leanna A. Loginov
Leanna A. Loginov
**SHAMIS & GENTILE, P.A.**
14 N.E. 1st Avenue, Suite 705
Miami, FL 33132
Tele: 305-479-2299
lloginov@shamisgentile.com

David K. Lietz
**MILBERG PLLC**
5335 Wisconsin Avenue NW, Suite 440
Washington, D.C. 20015-2052
Tel: 202-744-1795
dlietz@milberg.com

Leigh Montgomery
**ELLZEY KHERKHER SANFORD MONTGOMERY, LLP**
4200 Montrose, Ste. 200
Houston, TX 77006
Tel: 888-350-3931
lmontgomery@eksm.com

Raina C. Borrelli
**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, IL 60611
Tel: 872-263-1100
raina@straussborrelli.com

*Class Counsel for Plaintiffs and the Settlement Class*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed with the Clerk of Court of the United States District Court for the District of Maryland by using the CM/ECF System, which will send a notice of electronic filing on February 6, 2026.

*/s/ Leanna Loginov*
Leanna Loginov